**Charles Derek PHELPS, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–88–00117–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Dec. 1, 1988.

Douglas Durham, Houston, for appellant.

John B. Holmes, Dist. Atty., Harris County, for appellee.

Before JACK SMITH, DUGGAN and DUNN, JJ.

DUGGAN, Justice.

Appellant pleaded guilty to the felony offense of possession of a forged or counterfeit driver's license, Tex.Rev.Civ.Stat. Ann. art. 6687b, sec. 44A (Vernon Supp. 1988), pursuant to a plea bargain, and the trial court assessed punishment at the agreed sentence of five years confinement. In his notice of appeal, appellant specifically reserved the right to challenge the trial

court's adverse ruling on his motion to suppress.

Appellant contends that the trial court erred in failing to suppress a counterfeit Texas driver's license because it was "unlawfully seized" pursuant to an illegal, warrantless arrest.

The record reflects that the trial court considered appellant's motion to suppress and the attached affidavit, the State's opposition to the motion, and the transcript from the examining trial in lieu of live testimony.

Appellant argues that the officers had no probable cause to make the initial stop of his automobile. The State argues that the probable cause for the stop was the fact that federal drug agents saw appellant loading a precursor chemical, used to make methamphetamine, into his car at a chemical supply company. The State also points out that the agents had the company under surveillance because the owner of the company informed them that appellant would make a large purchase, and by authority of 21 U.S.C. § 881(a)(2) (1986), all raw materials, products, and equipment of any kind that are used or intended for use in manufacturing a controlled substance are subject to forfeiture. *See also* Tex.Rev.Civ. Stat.Ann. art. 4476–15, sec. 5.03(a)(2) (Vernon Supp.1988) (Texas statute with identical provision). When appellant's car was stopped to obtain the chemical, the forged driver's license was found.

In his affidavit, appellant averred that, at the time that he was stopped by the drug enforcement agents, he had done nothing to give the agents probable cause to stop him and that he did not consent to the search of his car. The State submitted the affidavit by W.G. Hawkins, a special agent employed by the Texas Department of Public Safety. He asserted that two federal agents from the drug enforcement administration informed him that appellant was observed loading boxes in his car after they learned from the owner of the chemical supply company that he would purchase 55 pounds of methylamine hydrochloride. The agents told Hawkins that this chemical was a "precursor chemical for production of methamphetamine, a controlled substance." Hawkins' affidavit concluded that:

> From the large quantity of chemical purchased and from the absence of any evidence of legitimate business use by the defendants [sic], Agents Castaneda and Gardiner knew from experience and training that the drugs were intended for manufacture of controlled substances.

At the examining trial, Paul Mills, the owner of the chemical supply company, testified that the sale was "suspicious," and that he recorded appellant's driver's license, the license plate number of the car, appellant's description and approximate age, and the color and kind of car on the invoice. The invoice indicated that the chemicals were paid for by cash in advance on August 28, 1987, and were ordered by a Dr. Gardner at Phillips Research. On September 17, 1987, after federal agents were notified and had placed the company under surveillance, appellant came to pick up the chemicals.

The State contends that the warrantless search of the car was proper because agents had probable cause to believe that it contained illegal controlled substances that were subject to forfeiture under 21 U.S. § 881(a)(2). *See United States v. $29,000 U.S. Currency,* 745 F.2d 853 (4th Cir.1984) (where officers had probable cause to believe that the car was being used to transport marijuana, they were authorized by 21 U.S.C. § 881 to seize the car without process).

The forfeiture provisions of section 881 that relate to raw materials or products state that such materials or products are subject to forfeiture if *"used, or intended for use,* in manufacturing, compounding, processing, delivering, importing, or exporting any controlled substance...."* (Emphasis added.) The government has the burden of going forward in a forfeiture proceeding under 21 U.S.C. § 881, but must establish only that reasonable grounds exist to believe that the materials or products were "used, or intended to be used" for manufacturing a controlled substance. *Compare One Blue 1977 AMC Jeep CJ–5*

*v. United States,* 783 F.2d 759 (8th Cir. 1986) (government must show reasonable grounds exist to believe that vehicle subject to forfeiture was used or intended to be used for prohibited purposes).

In *United States v. Head,* 783 F.2d 1422 (9th Cir.1986), federal drug enforcement agents were also involved in the surveillance of a chemical plant. The plant was one of the largest producers of ephedrine, which is a precursor drug of methamphetamine. The agents knew that possession of a large amount of ephedrine by anyone other than a manufacturer of nasal decongestants was very suspicious. While at the plant, the agents observed two men loading boxes into a van with a state insignia on the door. *Id.* at 1424.

After following the van to a convenience store, they approached the driver as he emerged from the store. The agents identified themselves, and Head, the driver, agreed to answer their questions. Head told the agents that he had purchased two chemicals, neither of which was ephedrine, and that he intended to experiment with them. The agents knew that the chemicals, which Head claimed that he purchased, could not be used together because of their chemical structure. They questioned him about the insignia on his car, and Head stated that, although he did not work for the state, he occasionally did "freelance" work at state nuclear plants. He could not produce any state identification, but did produce his driver's license, which revealed that he lived 250 miles away. He claimed to be visiting his girlfriend, but could not remember her address or phone number. When the officers specifically asked him if he had purchased ephedrine, he denied it. They then looked through the windows of the van and saw a box marked "L–Ephedrine," but Head again denied having the chemical. *Id.* at 1424–25.

The Ninth Circuit held that the officers' determination, as a result of their visual inspection, that the van probably contained a drug commonly used in the manufacture of methamphetamine, when added to their existing suspicions and Head's untruthfulness, constituted probable cause to open the van "to inspect its interior and to seize the chemicals and the other items of contraband found therein." *Id.* at 1428.

By contrast, the record in the instant case does not reveal that federal agents had reasonable grounds to believe that appellant intended to use the chemicals to manufacture a controlled substance, which would subject the chemicals to forfeiture under 21 U.S.C. § 881(a)(2). The federal agents were notified by the owner of the chemical company that a suspicious individual intended to purchase a large amount of methylamine chloride, which had been paid for by cash in advance. There is no evidence that it was unusual for chemical purchasers to order chemicals and pay cash in advance of the pick up. Although the owner of the supply company stated that appellant was "suspicious," there is no evidence as to why he thought the sale was suspect. The affidavit of the DPS officer states that the federal agents' experience and training gave them reasonable grounds to believe that the chemical would be used for manufacturing a controlled substance because of the large quantity purchased and the absence of evidence of a legitimate business use by appellant. However, the invoices from the chemical company recite that they were ordered by "Dr. Gardner of Phillips Research." The agents did not testify that they were aware that there was no such company as "Phillips Research," or no individual named "Dr. Gardner." Moreover, they did not establish on the record that they were aware that appellant had no affiliation with Phillips Research, if in fact the company did exist. It was only after the agents stopped appellant to seize the chemical that they determined that appellant had purchased the chemical with a counterfeit driver's license.

The State has failed to establish, on the record, that the officers had "reasonable grounds" prior to appellant's initial stop to believe that the chemicals were intended to be used for the manufacture of a controlled substance. The trial court erred in denying appellant's motion to suppress.

Point of error one is sustained.

The judgment is reversed and remanded.